Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

PATRICK F. COONEY, III,

      *Plaintiff,*

    v.

VINCENT ALBERTO, et al.,

      *Defendants.*

Civil Action No. 13-1849

**OPINION**

VINCENT ALBERTO,

      *Third Party Plaintiff,*

    v.

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY and THE CITY
OF JERSEY CITY,

      *Third Party Defendants*

**John Michael Vazquez, U.S.D.J.**

      This matter comes before the Court by way of three motions for summary judgment. Third-Party Defendants the City of Jersey City ("Jersey City") and New Jersey Manufacturers Insurance Company ("NJM") filed motions for summary judgment addressing coverage disputes. D.E. 71,

73. Third-Party Plaintiff Vincent Alberto filed briefs in opposition to which Defendants replied.[1] D.E. 94, 95, 98, 99. In addition, Plaintiff Patrick F. Cooney, III filed a motion for partial summary judgment seeking dismissal of two counterclaims. D.E. 72. Defendant Vincent Alberto filed a brief in opposition to which Plaintiff replied. D.E. 95, 97. The Court reviewed the submissions in support and in opposition to each motion, and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, the motions for summary judgment are all **DENIED**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### 1.  Factual Background

On June 1, 2012, Defendant Vincent Alberto, an off-duty Jersey City police officer, was finishing a run near his home in Paramus. As he was crossing an intersection, Plaintiff Patrick Cooney drove past Alberto. Jersey City's Statement of Undisputed Material Facts ("JC SOMF") ¶¶ 1-4.[2] Alberto believed that Cooney was driving aggressively, and the men "had an exchange of words" as Cooney drove past. Deposition Transcript of Vincent Alberto ("Alberto Dep.") T17:14-19; 21:19-23-15.[3] Cooney testified that Alberto shouted expletives at him as he drove past and he then noticed that Alberto was chasing after his car on foot. JC SOMF ¶ 5. Cooney stopped

---

[1] Plaintiff Patrick F. Cooney III also filed a brief in opposition to NJM's motion for summary judgment. D.E. 82. Because Cooney is not a party to the third-party complaint (*see* D.E. 31) and is not an insured under Alberto's NJM policy, he lacks standing to oppose NJM's motion. *See, e.g., Cruz-Mendez v. ISU/Ins. Servs. of S.F.*, 156 N.J. 556, 566–67 (1999) ("Generally, plaintiffs in tort actions may not directly sue insurers."). Consequently, the Court did not consider Cooney's brief in opposition when deciding NJM's motion.

[2] Cooney adopts Jersey City's Statement of Material Facts and the supporting exhibits. Cooney Statement of Undisputed Material Facts ("Cooney SOMF") ¶ 1.

[3] The deposition transcripts for Alberto, Cooney and Alberto's wife, Victoria Alberto, were included as exhibits to the Certification of Scott W. Carbone ("Carbone Cert."), D.E. 71-3 to -5. The Court will refer directly to the transcripts throughout this opinion.

his car to determine why Alberto was chasing him. Fortuitously, Cooney stopped his car near Alberto's home. *Id.* ¶ 6.

There is no dispute that an altercation ensued between the men. Ultimately, both men ended up on Alberto's neighbor's lawn. Cooney and Alberto, however, have materially different explanations as to how they ended up on the lawn.

Cooney testified after he stopped his vehicle, he opened his car door, looked in Alberto's direction, heard Alberto curse as he approached Cooney's car, and then asked Alberto, "What's going on?" JC SOMF ¶ 7; Cooney Dep. T29:12-15. Cooney started to get out of his car, but before he could exit the vehicle, Alberto punched him in the face and slammed his head against the car. JC SOMF ¶¶ 7-8. Cooney fell to the ground and Alberto kicked him in the ribs. Cooney attempted to stand and run away, but Alberto jumped on Cooney's back and Cooney fell in the yard across the street from his car. *Id.* ¶ 9. Cooney testified that Alberto continued to punch him in the head, neck, face and ribs for five to six minutes. *Id.* ¶ 11.[4] Cooney stated that sometime

---

[4] In responding to Jersey City's statement of material facts, Alberto failed to include supporting citations to the record for a number of paragraphs that he denied. *See, e.g.*, Response to Jersey City's Alleged Undisputed Facts ("Response") ¶¶ 7-11, D.E. 94-4. Local Civil Rule 56.1 requires an opponent of a motion for summary judgment to provide a responsive statement of material facts. If an opponent denies any paragraphs in his responsive statement, he must "cit[e] to the affidavits and other documents submitted in connection with the motion." L. Civ. R. 56.1(a). Jersey City argues that the Court should deem the paragraphs that lack appropriate citations as admitted due to Alberto's failure to abide by the local rule. JC Reply at 2-3. A court may deem paragraphs that do not comply with requirements set forth in Local Civil Rule 56.1 as admitted. *See, e.g.*, *7-Eleven, Inc. v. Sodhi*, No. 13-3715, 2016 WL 3085897, at *2 n.5 (D.N.J. May 31, 2016) (concluding that paragraphs in which defendants "disagreed" without support to the record were deemed undisputed). But Alberto did provide appropriate citations to the record for his version of events in his counterstatement of disputed facts. *See* Response at 3-4. As a result, the Court does not need to sift through the record to see if these facts are actually in dispute, but can instead refer to Alberto's citations (as can Jersey City). Therefore, the Court will not deem the paragraphs that lack appropriate citations to the record as admitted. *See, e.g.*, *Morris v. City of Trenton*, No. 13-6142, 2014 WL 4798871, at *4 (D.N.J. Sept. 26, 2014) (concluding that "is [was] in the interest of justice to evaluate [d]efendants' [m]otion on the merits" despite fact that they did not comply with L. Civ. R. 56.1(a)).

during this period, which lasted five to six minutes, Alberto informed Cooney that he was an off-duty police officer. *Id.* ¶ 13. Cooney also indicated that during this time period, Alberto told Cooney that he was "lucky that [Alberto] didn't get his gun" and that he "was going to kill [Cooney]." *Id.* ¶ 11.

Alberto, on the other hand, testified that when Cooney exited his vehicle, Cooney had his pet pit bull with him. Cooney walked the dog, who was on a leash, towards Alberto's house "in an aggressive manner"; came onto Alberto's driveway; attempted to unleash the dog; and stated, "Get him girl, get him girl, get him girl." Alberto Dep. T26:11-27:4. The dog was showing its teeth, growling, and barking. *Id.* T27:5-6. Alberto ran into his house; closed the screen door; advised his pregnant wife to call the police; ensured that his daughter, nephew, and mother-in-law were in the house; and instructed them to stay in the house. *Id.* T27:21-28:23. Alberto then went back outside and stood in his driveway, watching Cooney place his dog in the car. *Id.* T29:4-13. After Cooney put his dog in the car, he started yelling obscenities and "sprinted" onto Alberto's neighbor's property. Alberto informed Cooney that he was a police officer and that if Cooney did not leave, Alberto was going to place Cooney under arrest. *Id.* Cooney "became more irate, . . . [and] took a fighting stance," while continuing to yell more expletives. *Id.* T31:5-9. Cooney also stated, "I know you and your family live here and I'll come back." *Id.* T31:13-16. In response, Alberto told Cooney that he was under arrest. Cooney came onto Alberto's property and attempted to punch Alberto but did not make contact. T35:21-24. Alberto then used "necessary force to subdue [Cooney]," which resulted in Cooney and Alberto "wrestling around on the ground" on the neighbor's lawn. *Id.* T37:18-24.

Once on the neighbor's lawn, Alberto ended up on top of Cooney before landing at least two closed-fist punches to Cooney's head and one punch to his body. Alberto Dep. T32:9-22. The

4

neighbor, Kathleen Castino, called 911 and spoke with an operator after Alberto was on top of Cooney. Carbone Cert. Ex. F; *see also* Deposition Transcript of Victoria Alberto T20:18-19:-3 (stating that Alberto eventually got on top of Cooney during the fight and "subdued" Cooney while he was face down in the grass). The 911 call was recorded. Ms. Castino told the 911 operator that two men had been fighting in front of her house for about five minutes and that Alberto was on top of, and punching, Cooney. Ms. Castino did not see any blood, however, she could see bruising on Cooney's face from inside her house and stated that Cooney's face "was all punched in" while Alberto continued to punch Cooney. Carbone Cert. Ex. F. As the phone call progressed, Ms. Castino reported that Alberto twisted Cooney's arm back in manner that made Ms. Castino fear that Cooney's arm was going to break. *Id.* Ms. Castino remained on the phone until an unmarked police car arrived. *Id.* After more patrol cars arrived, Cooney was placed in handcuffs and taken away from the scene by ambulance. Carbone Cert. Ex. I; Alberto Dep. T39:16-19; Cooney Dep. T37:6-7.

As a result of the altercation, Cooney claims that he sustained serious and permanent injuries including a fracture of the inferior orbital of the left eye, blurred vision, permanent partial hearing loss, and a cracked pallet of the roof of the mouth. Cooney SOMF ¶ 6. Alberto was not injured. *Id.* ¶ 10. In addition, Alberto and Cooney both filed criminal complaints against each other in municipal court. Alberto's complaint against Cooney asserted claims for (1) aggravated assault; (2) terroristic threats; and (3) resisting arrest. *Id.* ¶ 16. Cooney's complaint as to Alberto alleged a single count for assault. *Id.* Cooney's complaint alleges that Alberto caused him "serious bodily injury . . . by, repeatedly stricking [sic] the victim in the head with a closed fist and kicking the victim in the ribs." Declaration of Michael Dolich Ex. F, D.E. 72. On July 11, 2012, "a municipal court judge found probable cause to credit Cooney's allegations against Alberto and

issued a warrant for his arrest." Cooney SOMF ¶ 16. All of the municipal court charges were later dismissed by mutual consent between Cooney and Alberto. JC SOMF ¶¶ 39-40.

### 2. Procedural History

Cooney filed his Complaint against Alberto and his wife[5] on March 25, 2013, asserting claims against Alberto for assault and battery, malicious prosecution, and excessive force in violation of 42 U.S.C. § 1983. D.E. 1. On May 10, 2013, Alberto filed an answer and counterclaims against Cooney, bringing claims for assault and battery, malicious prosecution, and bad faith litigation. D.E. 6.

On June 17, 2013, after Alberto sought coverage from his NJM homeowners insurance policy, NJM issued a coverage declination letter informing Alberto that there was no coverage for the underlying incident. NJM's Statement of Undisputed Material Facts ("NJM SOMF") ¶¶ 17, 26. Alberto made a second request for coverage on September 27, 2014, after preliminary discovery materials were exchanged in this matter. NJM reviewed the new materials but issued a supplemental declination letter, "reiterating that there is no coverage available under the NJM Policy." *Id.* ¶¶ 27-28. Alberto filed a third-party complaint against NJM on January 14, 2015 seeking defense and indemnification in connection with this lawsuit. D.E. 31.

Alberto's NJM policy provides coverage for "damages because of bodily injury or property damage caused by an occurrence." Mody Cert. Ex. G at 2, 13. "Occurrence" is defined as "an accident, . . . which results, during the policy period, in: (a) Bodily Injury." *Id.* The policy, however, excludes from coverage bodily injury "which is expected or intended by an Insured even if the bodily injury . . . [i]s of a different kind, quality, or degree than initially expected or intended." *Id.* at 14-15. There are also three relevant exclusions or exceptions in the policy.

---

[5] Cooney's claims against Victoria Alberto were dismissed on November 12, 2013. D.E. 18.

Exclusion (E)(1) provides an exception (the "Self-Defense Exception"), permitting coverage for bodily harm "resulting from the use of reasonable force by an insured to protect persons or property." *Id.* at 15. Exclusion E(2) (the "Business Pursuits Exclusion") excludes from liability coverage "[b]odily injury . . . arising out of or in connection with a business conducted from an insured location or engaged in by the insured." *Id.* at 15. "Business" is defined in the policy as "trade, profession, or occupation engaged in on a full-time, part-time or occasional basis." *Id.* at 1. Finally, Exclusion E(3) (the "Professional Services Exclusion") excludes "bodily injury . . . arising out of the rendering or failure to render professional services." *Id.* at 15.

Alberto also sought coverage from Jersey City in the third-party complaint pursuant to N.J.S.A. 40A:14-155. D.E. 31. This statute entitles a municipal police officer who is named as a defendant in a legal proceeding "arising out of and directly related to the lawful exercise of police powers in the furtherance of his official duties" to defense costs from the municipality where the officer is employed. N.J.S.A. 40A:14-155.

NJM and Jersey City both filed answers denying that they were required to provide defense costs or indemnify Alberto for the June 1 incident. D.E. 35, 40. On October 17, 2016, Jersey City filed its motion seeking summary judgment dismissing Alberto's third-party claim for defense costs. D.E. 71. NJM filed its motion for summary judgment dismissing Alberto's third-party claim on October 20, 2016. D.E. 73. Alberto filed briefs in opposition to both motions.[6] D.E. 93, 94.

---

[6] Jersey City's brief in support of its motion for summary judgment (D.E. 71-1) will be referred to as JC Br. and Alberto's opposition brief (D.E. 94) will be referred to as Alberto JC Br. NJM's brief in support of its motion for summary judgment (D.E. 73-1) will be referred to as NJM Br. and Alberto's opposition (D.E. 93) will be referred to as Alberto NJM Br.

After the close of discovery, Cooney filed his motion for partial summary judgment as to Alberto's counterclaims for malicious prosecution and fees and costs. D.E. 72. Cooney argues that Alberto fails to establish a *prima facie* claim for malicious prosecution because there was probable cause for Cooney's criminal complaint against Alberto. Cooney Br. at 5-6, D.E. 72. Alberto counters that this issue is not "ripe" for summary judgment because "it is unknown whether the totality of circumstances was taken into account" when the complaint was filed. Alberto Br. at 7, D.E. 95. Cooney also seeks summary judgment as to Alberto's claim for fees and costs, contending that because there was a judicial finding of probable cause Alberto's contention that this litigation was instituted in bad faith is without merit. Cooney Br. at 7.

## II.     SUMMARY JUDGMENT STANDARD

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III.    ANALYSIS

#### A. Third-Party Defendants' Motions for Summary Judgment

The third-party complaint presents an unusual set of facts in that Alberto seeks insurance coverage for the June 1 incident from Jersey City and through his homeowners insurance policy. Alberto maintains that he may be entitled to joint coverage from both entities because he was acting in his individual capacity and also within the scope of his authority as a police officer by making an off-duty arrest. Through these motions, Jersey City and NJM seek summary judgment dismissing Alberto's claims for defense costs and indemnification arguing that on the undisputed

facts, he is not entitled to coverage from either party. However, Jersey City adopts Cooney's version of events to support its argument while NJM relies on Alberto's version in its motion for summary judgment. Because there are multiple genuine issues of material fact, both motions are denied.

### 1. Coverage through N.J.S.A 40A:14-155 – Jersey City's Motion for Summary Judgment

Jersey City argues that it is not required to provide Alberto with defense costs pursuant to N.J.S.A. 40A:14-155 because Alberto's actions occurred while he was off-duty and were not "directly related to the lawful exercise of police powers in furtherance of [Alberto's] official duties" as a police officer. JC Br. at 27. Alberto counters that there is a material issue of fact as to whether he was acting within his capacity of a police officer by effectuating an off-duty arrest. Accordingly, Alberto argues, summary judgment is not appropriate. Alberto JC Br. at 3-5.

N.J.S.A. 40A:14-155 entitles a municipal police officer who is named as a defendant in a civil proceeding "arising out of and directly related to the lawful exercise of police powers in the furtherance of his official duties" to defense costs from the municipality that employs the officer. N.J.S.A. 40A:14-155. Courts use two tests to determine whether an officer is entitled to defense costs pursuant to N.J.S.A. 40A:15-155. Under the first test, a court must determine (1) if the legal proceeding is grounded on an affirmative act by the officer; and (2) if so, whether the officer acted with an ulterior illegal goal that would have perverted his or her job. *Aperuta v. Pirrello*, 381 N.J. Super. 449, 458-59 (App. Div. 2005). Courts also invoke the "scope of employment" test, which is a multi-factor analysis developed from the Restatement of Agency. *Id.* at 461. Under the scope of employment test, a court must consider whether the conduct at issue:

(1) is of the kind the servant is employed to perform;
(2) occurs substantially within the authorized time and space limits;
(3) is actuated, at least in part, by a purpose to serve the master;

(4) is of the same general nature as that authorized, or incidental to the conduct authorized; and

(5) if the conduct was not authorized, is nevertheless so similar to or incidental to the conduct authorized as to be within the scope of employment, by considering the following;

    (a) whether or not the act is one commonly done by such servants;

    (b) the time, place and purpose of the act; and

    (c) whether or not the act is seriously criminal.

*Id.* at 462 (internal citations and punctuation omitted).

Jersey City argues that it is not required to provide defense costs to Alberto for the June 1 incident regardless of which test the Court applies. JC Br. at 27-33. In making this argument, Jersey City relies entirely on Cooney's version of events and ignores Alberto's account of the incident.[7] As discussed, Alberto contends that he notified Cooney that he was a police officer, that Cooney then threatened both Alberto and his family, that Alberto informed Cooney that he was under arrest, that Cooney threw a punch at Alberto, and that Alberto used permissible force to subdue Cooney.. Alberto SOMF ¶¶ 10-14.

Alberto argues that pursuant to N.J.S.A. 40A:14-152.1, he may arrest an individual who he sees commit a crime anywhere in the state, at any time. Alberto JC Br. at 4. N.J.S.A. 40A:14-152.1 provides that "any full-time, permanently appointed municipal police officer shall have full power of arrest for any crime committed in said officer's presence," anywhere in the state. Consequently, using the scope of employment test, it appears that the conduct that Alberto

---

[7] If the jury accepts Cooney's version of events then Jersey City would be entitled to judgment as a matter of law because the jury would have concluded that Alberto was not acting as a police officer and instead assaulted Cooney without justification.

maintains he engaged in falls within the scope of conduct that Alberto is authorized to perform.[8]

Among other things, Alberto alleges that there was no physical contact between the men until after

Alberto identified that he was a police officer, that he was going to arrest Cooney and Cooney

attempted to punch Alberto. Moreover, the fact that the incident did not happen in Jersey City and

while Alberto was off-duty, which Jersey City argues are crucial facts (*see, e.g.*, JC Br. at 33), are

not critical in light of the statute. As discussed, the statute gives police officers authority to arrest

anywhere in the state and at any time (*see* N.J.S.A. 40A:14-152.1); there is no dispute that the

incident occurred in New Jersey while Alberto was off-duty.

By way of example, if on his run, Alberto witnessed an individual beating another person

with a weapon, Alberto would have authority under N.J.S.A. 40A:14-152.1 to make an arrest.

Indeed, it can reasonably be argued that Alberto would be derelict in his duties as a police officer

if he did not take action. If the assailant later brought a civil suit against Alberto, Alberto would

seemingly have a viable claim for defense costs pursuant to N.J.S.A. 40A:14-155. In short, there

is a material issue of fact as to whether Alberto was lawfully exercising his permissible police

authority during the altercation.

### 2. Homeowners Insurance Coverage – NJM's Motion for Summary Judgment

NJM argues that the June 1 incident is not covered by Alberto's homeowners insurance

under the plain terms of the policy. NJM, therefore, contends that the Court should conclude as a

---

[8] Jersey City also argues that the fact that a municipal court judge found probable cause existed to charge Alberto with a criminal offense also forecloses Alberto's right to defense costs. JC Br. at 33. A finding of probable cause is not dispositive if the jury accepts Alberto's version of the incident. If Alberto was acting as a police officer, the proper inquiry is whether his use of force was excessive, or if it was reasonable under the circumstances. *See, e.g.*, *Noble v. City of Camden*, 112 F. Supp. 3d 208, 227 (D.N.J. 2015) (explaining that to determine whether use of force was reasonable a court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight") (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989))).

matter of law that Alberto is not covered under the policy and its motion for summary judgment should be granted. NJM Br. at 2-3. Alberto asserts that NJM's motion should be denied due to the presence of genuine issues of material fact. Alberto NJM Br. at 5.

"[T]he words of an insurance policy are to be given their plain, ordinary meaning." *Zacarias v. Allstate Ins. Co.*, 168 N.J. 590, 595 (2001). When the terms of an insurance contract are clear, a court should enforce the policy as written and "not write for the insured a better policy of insurance than the one purchased." *Progressive Cas. Ins. Co. v. Hurley*, 166 N.J. 260, 273 (2001) (quoting *Longobardi v. Chubb Ins. Co. of N.J.*, 121 N.J. 530, 537 (1990)). "The burden is on the insured to bring the claim within the basic terms of the policy." *Reliance Ins. Co. v. Armstrong World Indus., Inc.,* 292 N.J. Super. 365, 377 (App. Div. 1996). It is the insurer's burden, however, to bring the matter within an exclusion in the policy. *Homesite Ins. Co. v. Hindman*, 413 N.J. Super. 41, 46 (App. Div. 2010) (quoting *Princeton Ins. Co. v. Chunmuang*, 151 N.J. 80, 95 (1997)). "[E]xclusions are presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'" *Hampton Med. Grp., P.A. v. Princeton Ins. Co.*, 366 N.J. Super. 165, 173 (App. Div. 2004) (quoting *Miller v. McClure*, 326 N.J. Super. 558, 565 (App. Div. 1998)). There are no ambiguities in the relevant policy provisions here. As a result, the Court will construe the policy terms according to their plain meaning.

NJM maintains that Alberto is not covered under the homeowners' policy because he acted intentionally. NJM Br. at 11-18. Generally, "[p]ublic policy denies insurance indemnification for the civil consequences of intentional wrongdoing." *Callo v. Allstate Ins. Co.*, No. A-1942-09T2, 2010 WL 4923031, at *4 (App. Div. Dec. 6, 2010). But if a wrongdoer did not intend or expect to cause an injury then the occurrence is accidental. *Merrimack Mut. Fire Ins. Co. v. Coppola*, 299 N.J. Super. 219, 226-227 (App. Div. 1997). Generally, "the accidental nature of an occurrence

is determined by analyzing whether the alleged wrongdoer intended or expected to cause an injury." *Voorhees v. Preferred Mut. Ins. Co.*, 128 N.J. 165, 183 (1992); *see also SL Indus., Inc. v. Am. Motorists Ins. Co.*, 128 N.J. 188, 212 (1992) (concluding that proper inquiry for determining coverage "under normal circumstances, [is] when the result of an action conforms to that which one would predict, the demonstration of a subjective intent to injure is sufficient to preclude coverage without further inquiry into the intent to cause the actual injury that resulted").

Courts should refrain from entering summary judgment with respect to "whether an insured intended or expected to cause the actual injury to a third party unless the record undisputedly demonstrates that such injury was an inherently probable consequence of the insured's conduct." *Harleysville Ins. Cos. v. Garitta*, 170 N.J. 223, 234 (2001). In some cases, however, the trier of fact may infer an intent to injure solely from the objective conduct of the insured. *Merrimack*, 299 N.J. super. at 227; *see also Callo*, 2010 WL 4923031, at *5 (finding as a matter of law that conduct objectively established that wrongdoer intended to harm plaintiff). But in this instance, the Court must also account for the Self-Defense Exception. Thus, an insured still maintains coverage if he acted intentionally, but reasonably, while protecting persons or property. Mody Cert. Ex. G, at 15.

Here, there are material issues of fact that preclude the Court from concluding as a matter of law that the NJM policy does not cover Alberto for the underlying incident because he acted intentionally. Critically, Alberto argues that a reasonable jury could conclude that during the June 1 incident, he was not acting within his capacity as a police officer, but rather, was a civilian who was acting in self-defense to protect himself and his family. Alberto NJM Br. at 1; *see also* Alberto Dep. T25:5-8 ("[I]t was also my instinct as a father and a husband. I was protecting my house . . . , I was protecting my family."). There are facts in the record, if accepted by the jury, that would support Alberto's argument. For example, Alberto maintains that Cooney threatened him with a

pit bull in front of his house, when his pregnant wife, mother-in-law, and two-year old daughter were at home. Likewise, Cooney verbally threatened both Alberto and Alberto's family. Of course, under Cooney's version of events, Cooney never posed a threat to Alberto, his family or his property because Alberto began assaulting Cooney when Cooney exited his car. JC SOMF ¶¶ 7-8. Thus, any determination of whether the policy covers Alberto involves numerous material issues of fact including: (1) whether Alberto was acting as a private civilian or within the scope of his duties as a police officer; (2) whether Cooney in fact threatened Alberto, and if so, (3) whether Alberto's actions in response to the alleged threats were reasonable. These factual inquiries preclude granting summary judgment for NJM.[9]

Using Alberto's account, NJM argues that the Court can infer a subjective intent to injure due to statements that Alberto made during the altercation. NJM maintains that these statements "unequivocally demonstrate Alberto's intent to injur[e] [] Cooney." *See* NJM Br. at 16-18. But these statements do not conclusively demonstrate intent. Moreover, there are genuine issues of material fact as to which version of events actually occurred on June 1. Although NJM raises plausible arguments concerning the Alberto's use of force in light of the neighbor's 911 call, the Court cannot conclude as a matter of law that Alberto was not acting in either his capacity as a police officer or in his capacity as a private homeowner reasonably protecting himself, his family, or his property. In short, the record reveals classic factual disputes that must be resolved by a jury.

---

[9] NJM adopts Alberto's version of events. *See, e.g.*, NJM SOMF ¶¶ 6-7. But as discussed, a reasonable jury could instead accept Cooney's story. As noted, Cooney claims that Alberto attacked him immediately and without provocation. If the jury believes Cooney's account, Alberto would not be covered by the NJM policy because the self-defense exception would not apply and the Court could conclude as a matter of law that Alberto's conduct was intentional. *See, e.g.*, *Callo*, 2010 WL 4923031, at *5 (concluding as a matter of law that conduct was intentional where wrongdoer punched third-party multiple times in the face after threatening to do so).

NJM also argues that Alberto does not have coverage under the policy because of the Business Pursuits Exclusion. Under New Jersey law, business activities are generally considered activities that are continuous or regular in nature and are engaged in by the insured for the purpose of earning a profit, compensation or a means of earning a living. *Pettinato v. Cigna Prop. & Cas. Cos.*, 303 N.J. Super. 576, 581 (Law. Div. 1997); *see also Canal Ins. Co. v. Underwriters at Lloyd's London*, 435 F.3d 431, 438 (3d Cir. 2006) (stating that "business pursuits exclusion" under Pennsylvania law "applies where the liability arises from a business-related endeavor and the activity in question is 'conducted in further of the business' interests").

Here, Alberto has been a full-time police officer with Jersey City for eleven years. Alberto Dep. T11:22-12:8. As a police officer, Alberto routinely responds to calls for service and making arrests is "part of the ordinary course of [his] job." *Id.* T50:15-51:10. In addition, Alberto believes that as a police officer he is "bound by law" to act if he witnesses a crime while off-duty. *Id.* T51:20-52:2; *see also* N.J.S.A. 40A:14-152.1. Thus, any activities that Alberto engaged in as a police officer during the underlying incident would fall under the Business Pursuits Exclusion as his role as an officer is regular in nature and is a means of livelihood. This conclusion might seem suspect, as a reasonable reading of the exclusion could arguably limit it to business pursuits that are pursued regularly on the insured property. However, other courts who have confronted this issue have determined that the exclusion applies. *See, e.g.*, *Am. Family Mut. Ins. Co. v. Nickerson*, 657 F. Supp. 2, 5 (E.D. Mo. 1986) (concluding that off-duty police officer who informed third-party that he was a police officer and explained his purpose was involved in conduct that was incidental to his role as a police officer and therefore was not covered by homeowners policy because of the business pursuits exclusion); *Jude v. City of Milwaukee*, No. 06-1101, 2007 WL 3171293, at *6 (E.D. Wis. Oct. 26, 2007) (concluding that conduct of off-duty police officer fell

into scope of his employment and therefore insurer had no duty to defend due to business pursuits exclusion). But as discussed, there is a material issue of fact as to whether Alberto was effectuating an arrest during the June 1 incident. Although NJM assumes that Alberto was acting pursuant to his duties as a police officer (the opposite conclusion reached by Jersey City), there are facts at issue that prevent the Court from making this determination as a matter of law. As a result, the Court cannot conclude at this stage that the Business Pursuits Exclusion is necessarily applicable such that it can grant NJM's motion for summary judgment. If, however, a jury concludes that Alberto was effectuating an arrest in his capacity as a law enforcement officer, he would not have coverage under the NJM policy.[10]

In addition, NJM contends that there is no coverage for the underlying incident as a result of the Professional Services Exclusion. NJM Br. at 22-27. Professional services "embrace those activities that distinguish a particular occupation from other occupations[, ]as evidenced by the need for specialized learning or training[] and from the ordinary activities of life and business." *Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of Am*, 559 F. Supp. 2d 504, 513 (D.N.J. 2008) (quoting *Hampton Med. Grp., P.A. v. Princeton Ins. Co.*, 366 N.J. Super. 165, 178 (App. Div. 2004)). Whether the Professional Services Exclusion applies here rests entirely on the resolution of whether Alberto was effectuating an arrest in his role as a police officer. The cases

---

[10] Viewing this case pragmatically, the Court notes that Cooney took the somewhat unusual position in arguing that NJM should not be granted summary judgment. If a jury accepts Cooney's version of events, then Alberto will not have coverage from NJM or Jersey City. As a result, Cooney's ability to recover from Alberto will likely be severely limited. And Cooney will not recover anything if the jury accepts Alberto's version of events even though either NJM or Jersey City may have to provide coverage for Alberto if the jury rules in his favor. As noted, the Court did not consider Cooney's submission in deciding the merits of NJM or Jersey City's motion. However, the argument by Cooney that NJM should not be granted summary judgment was somewhat perplexing to the Court because it appears that if the Self-Defense Exception to the policy applies, then the jury will have accepted Alberto's version of events and rejected Cooney's.

that NJM submitted for support pertained to professional occupations such as engineers and lawyers. Nevertheless, because the Court already concluded that if the jury finds that Alberto *was* acting within the scope of his duties as a police officer, he is not covered by his homeowners' policy due to the Business Pursuits Exclusion. Consequently, the Court need not also address whether the Professional Services Exclusion also applies.

### B. Cooney's Motion Regarding the Counterclaims

#### 1. Malicious Prosecution

The elements of a malicious prosecution claim are as follows: (1) the defendant instituted a criminal action against the plaintiff; (2) the action was actuated by malice; (3) there was an absence of probable cause; and (4) the proceeding terminated in the plaintiff's favor. *Brunson v. Affinity Fed. Credit Union*, 199 N.J. 381, 393-94 (2009) (quoting *Helmy v. City of Jersey City*, 178 N.J. 183, 190 (2003)).

Cooney argues that summary judgment must be granted for Alberto's claim of malicious prosecution because there was probable cause for Cooney's criminal complaint and Alberto's arrest warrant. Cooney Br. at 5-6. The essence of a malicious prosecution claim is the lack of probable cause. *Land v. Helmer*, 843 F. Supp. 2d 547, 550 (D.N.J. 2012) (quoting *Lind v. Schmid*, 67 N.J. 255, 262 (1975)). Probable cause is defined as "reasonable grounds for suspicion supported by circumstances sufficiently strong in themselves to warrant an ordinarily cautious [person] in the belief that the accused is guilty of the offense with which he is charged." *Id.* (quoting *Lind*, 67 N.J. at 263 (1975)). Although the absence of probable cause is generally a fact question for the jury, summary judgment may be appropriate due to the presence of probable cause if, "taking all of [the non-moving party]'s allegations as true and resolving all inferences in his

favor, a reasonable jury could not find in [the non-moving party]'s favor." *Stolinski v. Pennypacker*, 772 F. Supp. 2d 626, 638 (D.N.J. 2011).

Here, there is a genuine issue of material fact as to whether there was probable cause for Cooney's criminal complaint in light of the competing versions of events from Cooney and Alberto. As discussed at length above, Cooney and Alberto have materially different accounts of the events on June 1, and a reasonable jury could accept either version. Critically for Alberto's malicious prosecution claim, Alberto maintains that when the physical altercation occurred he was effectuating an arrest as a police officer and only used necessary force. *See, e.g.*, Alberto Dep. T37:18-24. Cooney, however, alleges that Alberto began attacking him before Cooney could fully exit his vehicle. JC SOMF ¶¶ 7-8. Because the absence of probable cause is generally a fact question for the jury, and in light of numerous factual disputes, the Court cannot conclude as a matter of law that there was probable cause for issuing a criminal complaint against Alberto.

However, and more importantly, the Court notes that it does not appear that either party will prevail on their malicious prosecution claim in light of the fourth element. To win a malicious prosecution claim, a party must establish that the criminal proceeding terminated in his favor. "If the charge is withdrawn or the prosecution abandoned pursuant to an agreement of compromise with the accused, the termination is viewed as indecisive and insufficient to support the cause of action [for malicious prosecution]. . . . Having compromised for his peace in the criminal proceeding, the accused may not later contend that the proceedings terminated in his favor." *Mondrow v. Selwyn*, 172 N.J. Super 379, 385 (App. Div. 1980) (internal citations omitted). For example, in *Turback v. Borough of Spotswood*, through a plea bargain, the prosecutor's officer abandoned charges related an incident raised in plaintiff's malicious prosecution claim. The court granted summary judgment for defendants as to the malicious prosecution claim in light of the

dismissal because plaintiff could not establish that the criminal proceeding ended in his favor. No. 05-3490, 2007 WL 1816167, at *2 (D.N.J. Jun. 22, 2007). Here, the criminal charges against Cooney and Alberto were dismissed by way of mutual agreement. Cooney SOMF ¶ 17. Consequently, it appears that neither party will be able to establish that the criminal proceedings resolved in his favor.

Cooney did not raise this argument in his moving papers[11] and Alberto did not even move for summary judgment. As a result, this argument is not properly before the Court and the Court declines to raise it *sua sponte*. Nevertheless, the parties are required, within ten (10) days, to submit a letter to the Court explaining their positions as to why their respective claims for malicious prosecution are not futile in light of the fourth element.

### 2. Claim for Attorneys' Fees and Costs

In Count Four of the Counterclaim, Alberto alleges that Cooney's civil suit is frivolous and was instituted in bad faith. As a result, Alberto seeks attorneys' fees and costs pursuant to N.J.S.A. 2A:15-59.1 and 42 U.S.C. Section 1988. *See* Counterclaim ¶¶ 15-16. Cooney seeks summary judgment for Count Four, arguing that the fact that there was probable cause to support his criminal complaint establishes that his civil suit is not frivolous or filed in bad faith. Cooney Br. at 7.

---

[11] Cooney first raised the argument in his reply brief. *See* Cooney Reply at 4, D.E. 97. But "[i]t is axiomatic that reply briefs should respond to the respondent's arguments or explain a position in the initial brief that the respondent has refuted." *Bayer AG v. Schein Pharm., Inc.*, 129 F. Supp. 2d 705, 716 (D.N.J. 2001) (quoting *Elizabeth Water Co. v. Hartford Cas. Ins. Co.*, 998 F. Supp. 447, 458 (D.N.J. 1998)). The rationale behind this rule is that "a party opposing summary judgment has no opportunity to respond." *Id.* Consequently, courts routinely disregard or strike arguments that were first raised in a reply brief. *See, e.g., id.; D'Alessandro v. Bugler Tobacco Co.*, No. 05-5051, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007) (disregarding new argument in reply brief).

Pursuant to N.J.S.A. 2A:15-59.1, a prevailing party in a civil action may be awarded fees and costs "if a judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous." N.J.S.A. 2A:15-59.1(a)(1). Similarly, Section 1988 affords prevailing parties that assert claims under Section 1983, among others, with the ability to recover reasonable attorneys' fees and costs. 42 U.S.C. § 1988(b). A prevailing party is one who "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Truesdell v. Phila. Housing Auth.*, 290 F.3d 159, 163 (3d Cir. 2002) (discussing 42 U.S.C. § 1988(b)). Because there is no prevailing party yet, any decision as to an award of fees and costs is premature. As a result, Cooney's motion for summary judgment as to Count Four of the Counterclaim is **DENIED**. This denial, however, does not preclude Cooney, or any prevailing party, from revisiting this issue at a later date if appropriate.

## IV.     CONCLUSION

For the reasons set forth above, Third-Party Defendants' motions for summary judgment [D.E. 71, 73] are **DENIED**. If the evidence at trial warrants,[12] the Court can submit special interrogatories to the jury on many of the issues raised. In addition, Plaintiff Patrick F. Cooney III's partial motion for summary judgment as to the counterclaims [D.E. 72] is also **DENIED**. Plaintiff and Defendant, however, are required within ten (10) days to submit a letter to the Court explaining their position as to why their respective claims for malicious prosecution are not futile. An appropriate Order accompanies this opinion.

Dated: June 23, 2017

John Michael Vazquez, U.S.D.J.

---

[12] The denial of summary judgment is based on the record as it currently stands. Of course, no party is precluded from arguing that it is entitled to judgment as a matter of law if the evidence adduced does not support the issue going to the jury.